# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID C. JACKSON, | ) |
| Plaintiff, | ) Case No. 19-CV-07284 |
| v. | ) |
| THE JOLIET POLICE DEPARTMENT, THE CITY OF JOLIET, AL ROECHNER, JOSEPH ROSADO, JOHN PERONA, ED CLARK, JASON OPIOLA, AND FRANK BALOY, | ) Honorable Thomas M. Durkin ) ) Jury Trial Demand |
| Defendants. | ) |

### CITY OF JOLIET, AL ROECHNER, JOSEPH ROSADO, AND JOHN PERONA'S MEMORANDUM OF LAW IN SUPPORT OF RULE 12(b)(6) PARTIAL MOTION TO DISMISS

Defendants City of Joliet ("City"), Al Roechner ("Roechner"), Joseph Rosado ("Rosado") and John Perona ("Perona") move to partially dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of their Motion, the Defendants state as follows:

**I.  12(b)(6) Motion to Dismiss Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. Rosado and Perona Must Be Dismissed From Count I Based On Qualified Immunity

Rosado and Perona must be dismissed from Count I because they enjoy qualified immunity from Plaintiff's Section 1983 claim. Count I alleges that Rosado and Perona engaged in several actions against Plaintiff in response to a variety of allegedly actions and speech protected by the U.S. Constitution. *See* Cmplt. ¶ 152, 155.

Perona and Rosado are shielded from liability, however, if "their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Akande v. Grounds*, 555 F.3d 586, 589 (7th Cir. 2009). Because "the purpose of qualified immunity is to protect public officials from guessing about constitutional developments at their peril, the plaintiffs have the burden of showing that the constitutional right was clearly established." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). To meet this burden, Plaintiff must come forward with a "clearly analogous case establishing a right to be free from the specific conduct at issue." *Smith v. City of Chi.*, 242 F.3d 737, 742 (7th Cir. 2001). Here, Plaintiff cannot meet this burden.

The Complaint alleges that Perona committed a sum total of three discrete acts against Plaintiff: (1) attended a lunch meeting that intimidated Plaintiff; (2) ordered Plaintiff to arrive at the Police Station within 15 minutes; and (3) commented at roll call meetings that Plaintiff was "guilty of a crime." *See* Pl's Cmplt. ¶¶ 63, 111, 137, 160. In addition, Rosado allegedly committed the following acts against Plaintiff:

- filed an internal affairs charge against Plaintiff at the direction of Police Chief Roechner; *see* Pl's Cmplt. ¶¶ 79, 81;
- called Plaintiff and "asked" Plaintiff to speak with Defendant Crest Hill Police Officer Opiola; *see* Pl's Cmplt. ¶ 107;

- conveyed to Plaintiff that Roechner and Perona were ordering Plaintiff to return to the Police Station within 15 minutes; *see* Pl's Cmplt. ¶¶ 111;

- took a lead role in the investigation of Plaintiff's alleged criminal behavior; *see* Pl's Cmplt. ¶¶ 116;

- conducted Joliet's internal investigation into Plaintiff's alleged criminal behavior; *see* Pl's Cmplt. ¶¶ 119; and

- "failed to include exculpatory evidence in the Internal Affairs report;" *see* Pl's Cmplt. ¶ 121.

Defendants' research has uncovered no relevant decisions that come anywhere close to suggesting that such conduct qualifies as a constitutional violation. Indeed, a number of decisions support qualified immunity for Rosado and Perona with regard to such alleged conduct.

A. <u>Rosado</u>. First, there is no clear constitutional prohibition against Rosado filing an internal affairs charge against Plaintiff at the Chief's direction, *see* Pl's Cmplt. ¶¶ 79, 81, and communicating to Plaintiff that the Chief wanted Plaintiff to come back to the Police Station in 15 minutes. *See* Pl's Cmplt. ¶ 111; *cf. Estate of Brown v. Thomas*, 771 F.3d 1001, 1005 (7th Cir. 2014) (qualified immunity for officer who simply was following orders by implementing a departmental search policy).

Second, Plaintiff's Complaint demonstrates a reasonable basis for Rosado to investigate Plaintiff's conduct vis-à-vis Stacy Ward. Specifically, the fact that Plaintiff and Ward consumed alcoholic beverages on the evening of March 9, 2019; had a verbal argument about money; and that the Crest Hill Police Department received a "domestic call" involving Plaintiff, *see* Pl's Cmplt. ¶¶ 96-97, 99, 101, all suggest that Rosado had every reason to look further into Ward's

criminal allegations against Plaintiff, who is a sworn Joliet police officer. *See Archer v. Chisholm*, 188 F. Supp. 3d 866, 890 (E.D. Wis. 2016) (qualified immunity applied to plaintiff's "retaliatory investigation" constitutional claim). At the very least, case law is unsettled whether merely conducting a "retaliatory investigation" states a viable constitutional claim by itself. *See id.* ("it is unclear whether a retaliatory investigation . . . rises to the level of a constitutional violation. Neither the Supreme Court nor the Seventh Circuit has addressed the issue.").

Third, federal courts have held that there is no clear constitutional cause of action for an improper investigation. *See Braunstein v. Paws Across Pittsburgh*, Case No. 2:18-cv-788, 2019 WL 1458236 at *11 (W.D. Pa. April 2, 2019) (granting qualified immunity to officer based on "reckless investigation claim" due to "the majority of circuits [that] do not recognize a stand-alone right to be free from reckless investigation"). Moreover, if one analogizes to the search warrant context, police officers regularly are eligible for "qualified immunity" based on the intentional omission of "exculpatory evidence" from a search warrant. In those contexts, courts regularly ask whether the omitted information would have changed a judge's mind about the existence of probable cause, in light of other material evidence. *See, e.g., Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1060 (7th Cir. 2018) (omissions of key facts about informant's heroin addiction and confusion about location of residence did not defeat qualified immunity for officer requesting a search warrant); *Herbig v. Kretzer*, 562 Fed. Appx. 845, 847 (11th Cir. 2014) (omission from search warrant regarding informant's bitter divorce did not defeat qualified immunity for requesting officer); *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126-27 (9th Cir. 1997) (officer enjoyed qualified immunity despite intentionally omitting material information from search warrant).

In light of this case law, omitting "exculpatory evidence" by itself is irrelevant for purposes of a constitutional violation. The significance of such excluded evidence must be assessed in comparison to other material evidence. The problem, however, is that Plaintiff's Complaint nowhere alleges the nature of the "exculpatory evidence" that Rosado supposedly omitted. As a result, the Court should grant qualified immunity to Rosado, because there is no way for the Court to tell whether Rosado should have known he was allegedly violating the Constitution by omitting the alleged "exculpatory evidence."

Fourth and finally, the Defendants have been unable to identify a single decision where simply asking someone to speak to a police officer (in this case, Defendant Opiola) somehow qualifies as a constitutional violation. As a result, Rosado should be dismissed from Count I based on qualified immunity grounds.

B. <u>Perona</u>. Perona is also entitled to qualified immunity. As with Rosado, the Defendants have been unable to locate a single decision where directing an employee to return to work within 15 minutes qualifies as a constitutional violation.

Defendants also have been unable to locate any decisions where a defendant's mere presence at a lunch meeting qualifies as unconstitutional "intimidation." If anything, decisions suggest that an individual does not have the right to be free of intimidation, where the intimidation does not lead to some type of injury. *See, e.g., Allen v. City and Cnty. of Honolulu*, 816 F. Supp. 1501, 1505 (D. Haw. 1993). Moreover, simply attending a meeting to observe and collect information does not violate the Constitution (even if an attendee might feel intimidated). *See Philadelphia Yearly Meeting of the Religious Society of Friends v. Tate*, 519 F.2d 1335, 1337-338 (3d Cir. 1975) (mere presence and information gathering activities of police did not raise a constitutional problem). Here, Plaintiff has alleged nothing more than Perona attended a

meeting to "intimidate" Plaintiff. Because case law would not have placed Perona on notice that his mere presence at a lunch meeting would have violated the Constitution, Perona is entitled to qualified immunity for that action.

Third, there is no constitutional right to be free from allegedly defamatory comments about one's guilt. Put another way, slander and defamation are not actionable under a constitutional tort theory. According to the U.S. Supreme Court, "the weight of our decisions establishes no constitutional doctrine converting every defamation by a public official into a deprivation of liberty." *Paul v. Davis*, 424 U.S. 693, 702 (1976); *accord Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 262 (7th Cir. 1999) (no Section 1983 violation simply by publicizing the contents of an allegedly false police report to the plaintiff's supervisor). As a result, Perona could not have violated Plaintiff's constitutional rights by allegedly sharing Perona's opinion with employees about Plaintiff's guilt, nor could Perona have possibly known that such actions were unconstitutional. As a result, Perona should be dismissed from Count I based on qualified immunity grounds.

## III. Count III Must Be Dismissed, Because Plaintiff Has Failed to Exhaust His Administrative Remedies

Count III alleges violations of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq*. Before filing such a lawsuit, however, a plaintiff "must obtain a right-to-sue letter before bringing a suit—and a court will typically insist on satisfaction of that condition." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 487 (2015). Plaintiff has not alleged that he obtained a right-to-sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC"). As a result, all of Article III must be dismissed. *See Fields v. Vill. of Skokie*, 502 F. Supp. 456, 458 (N.D. Ill. 1980) (dismissing Title VII lawsuit for failure to secure a right-to-sue letter).

Alternatively, the "disparate impact" violation alleged in Count III must be dismissed. *See* Pl's Cmplt. ¶¶ 194-96. A plaintiff may sue only on claims that were included in his underlying EEOC. *See Cervantes v. Ardagh Group*, 914 F.3d 560, 564 (7th Cir. 2019). Here, Plaintiff's charge (attached as Exhibit A)[1] nowhere expressly cited disparate impact, nor did it reference a facially-neutral policy that disproportionately impacts a protected class, which are the necessary elements for a disparate impact claim. *See generally Pardon v. Wal-Mart Stores, Inc.*, 783 F. Supp. 2d 1042, 1049 (N.D. Ill. 2011). Instead, the charge exclusively focuses on intentional discrimination. As a result, Plaintiff cannot pursue a disparate impact theory in this proceeding, and any such theory in Count III must be dismissed. *See id*. (dismissing disparate impact claim as beyond the scope of plaintiff's charge); *see also DeJesus v. Contour Landscaping, Inc.*, 763 F. Supp. 2d 1029, 1039 (N.D. Ill. 2011) (same); *Lumsden v. Campbell Taggart Baking Co.*, Case No. 95 C 4362, 1997 WL 610059 at *3 (N.D. Ill. 1997) (allegations in EEOC charge "do not contain even a hint of a disparate impact claim").

## IV. Rosado and Perona Must Be Dismissed From Count IV Because Of A Lack Of Materially Adverse Job Actions

Count IV alleges that Rosado and Perona in their individual capacities discriminated and/or retaliated against Plaintiff based on his race and protected activity in violation of 42 U.S.C. § 1981. "To prevail on either a discrimination or retaliation claim under Section 1981 in the employment context, a plaintiff must allege that her employer subjected her to adverse actions." *Adam v. Obama for America*, 210 F. Supp. 3d 979, 988 (N.D. Ill. 2016), *citing Shott v.*

---

[1] Because Plaintiff's charge was referenced in his Complaint, *see* Cmplt ¶ 143, Defendants are allowed to attach and refer to the charge in their Motion to Dismiss. By extension, the Court is allowed to consider the charge without converting the Defendants' Motion into one for summary judgment. *See McCready v. eBay, Inc*., 453 F. 3d 882, 891 (7th Cir. 2006) ("documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiffs complaint and are central to his claim"); *Flores v. Bd. of Trustees of Community College Dist. No. 508*, 103 F. Supp. 2d 943, 948 (N.D. Ill. 2015) (IDHR charge could be considered due to complaint reference to the document).

*Katz*, 829 F.3d 494, 497 (7th Cir. 2016). "In the employment context, federal law does not protect against petty slights, minor annoyances, and bad manners." *Id.* (quotation marks omitted). "Rather, an employee must show some quantitative or qualitative change in the terms or conditions of his employment or some sort of real harm." *Id.* (quotation marks omitted).

Rosado and Perona's alleged actions do not qualify as adverse job actions for Section 1981 purposes. For example, Perona's allegedly intimidating presence at a single lunch meeting with Plaintiff, ordering Plaintiff to come to work within 15 minutes on a single occasion, and supposedly telling employees about his opinion concerning Plaintiff's "guilt" did not, as a matter of law, materially change Plaintiff's terms and conditions of employment. *See, e.g., Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 649-50 (7th Cir. 2011) (shift-change policy did not qualify as an adverse action); *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009) (being "stared and yelled at" did not qualify as an adverse action); *Helgeson v. American Int'l Group, Inc.*, 44 F. Supp. 2d 1091, 1099 (S.D. Cal. 1999) (internal comments about an extra-marital affair did not constitute an adverse action). Therefore, Perona cannot be liable for a Section 1981 violation, and must be dismissed from Count IV.

The gist of Plaintiff's claims against Rosado focus on his alleged participation in a criminal investigation into Plaintiff's conduct, and his supposed omission of exculpatory evidence from a final report. However, internal investigations by themselves are not adverse employment actions. *See Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 787 (7th Cir. 2007) (placement of plaintiff on paid leave pending results of fitness-for-duty psychological examination did not constitute adverse employment action); *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 625 (6th Cir. 2013) ("neither an internal investigation into suspected wrongdoing by an employee nor that employee's placement on paid administrative leave pending the outcome of

such an investigation constitutes an adverse employment action."). In that respect, the Complaint nowhere alleges that Rosado's investigation (and supposed omission of exculpatory evidence) had any adverse effect on Plaintiff's terms and conditions of employment. Therefore, Rosado cannot be liable for a violation of Section 1981, and must be dismissed from Count IV.

**V.    Perona Must Be Dismissed From Count V Because His Alleged Actions Do Not Qualify As "Severe and Outrageous" Conduct**

Count V alleges that Perona committed the tort of intentional infliction of emotional distress ("IIED"). Under Illinois law, a plaintiff must prove the following elements for an IIED claim: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; [and] (3) the defendant's conduct in fact caused severe emotional distress." *Cook v. Winfrey*, 141 F.3d 322, 330 (7th Cir. 1998) (affirming IIED dismissal on 12(b)(6) motion) (*quoting Doe v. Calumet City*, 161 Ill.2d 374 (1994)). In Illinois, "[l]iability for emotional distress, as a common-law tort, is even more constrained in the employment context." *Richards v. U.S. Steel*, 869 F.3d 557, 567 (7th Cir. 2017). There is general hesitation to find IIED "in the workplace because, if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action . . . nearly every employee would have a cause of action." (Internal citations and quotations omitted). *Id*. Here, Plaintiff has failed to sufficiently plead that Perona's conduct in the workplace was "extreme and outrageous."

As explained above, Perona allegedly: (1) intimidated Plaintiff at a lunch meeting; (2) given Plaintiff 15 minutes to return to the Police Station on a single occasion; and (3) told employees that Perona thought Plaintiff was "guilty" of criminal misdemeanor charges. These are a far cry from "extreme and outrageous" behavior. *See id.* at 331-32 (uttering defamatory

statements does not constitute "extreme and outrageous" conduct for IIED purposes); *Richards*, 869 F.3d at 567-68 (alleged comments about an employee's competency, insulting employee's weight, daring employee to call supervisor insulting name to his face, and grabbing radio off an employee's chest to make a call did not qualify as "extreme and outrageous"). As a result, Perona should be dismissed from Count V.

## VI. Joliet, Roechner, Rosado And Perona Must Be Dismissed From The False Arrest/False Imprisonment Count (VI)

Count VI of the Complaint alleges a common law false arrest/false imprisonment claim against the City, Roechner, Rosado and Perona (along with two other defendants). Under Illinois law, the essential elements of a cause of action for false arrest or false imprisonment are: "(1) the plaintiff was restrained by the defendant and (2) the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." *Hanna v. Marshall Field & Co.*, 279 Ill. App. 3d 784, 793 (1st Dist. 1996); *see also Schor v. Daley*, 563 F. Supp. 2d 893, 900 (N.D. Ill. 2008).

Where a plaintiff alleges that a defendant has contributed to an arrest/imprisonment (but was not the actual detaining party), it must be shown that the defendant "was the 'sole source' of information or allege that the defendant actually 'command[ed], request[ed], or direct[ed] authorities to arrest plaintiff." *Shea v. Winnebago Cnty. Sheriff's Office*, Case No. 12-CV-50201, 2014 WL 4449605 at *20 - *21 (N.D. Ill. 2014), *aff'd in relevant part*, 746 Fed. Appx. 541 (7th Cir. 2018). In *Shea*, the court granted the plaintiff's 12(b)(6) motion to dismiss, where the complaint only alleged that defendant "contributed to [the plaintiff's] wrongful incarceration." *Id*. Contribution to the arrest was not enough, where the plaintiff did not allege the defendant was the "sole source" of information that led to the plaintiff's arrest, or that the defendant had actively requested plaintiff's arrest. *See id*. at *21; *see also Carey v. K-Way, Inc.*, 312 Ill.App.3d

666, 670-671 (1st Dist. 2000) (false arrest claim against defendant properly dismissed due to lack of evidence that defendant was the "sole source" of information that led to arrest, or that defendant had requested the arrest).

Here, Plaintiff's Complaint nowhere alleges that Roechner, Rosado or Perona were the ones who literally detained Plaintiff. At most, Plaintiff alleges that Roechner (through Rosado or Perona) ordered Plaintiff to appear at the Joliet Police Station. *See* Cmplt. ¶ 214. However, an employer ordering an employee to appear at his place of employment does not qualify as "detainment." Otherwise, false arrest/imprisonment claims would arise every time an employee is ordered back to work overtime. In that respect, "[t]he restraint that results merely from a plaintiff's fear of losing his job or belief that he would be fired immediately if he left the room is insufficient as a matter of law to make out a claim of false imprisonment." *Hanna*, 279 Ill. App. 3d at 793.

Alternatively, Plaintiff fails to allege any of the individual Joliet defendants were the "sole source" of the information that led to Plaintiff's arrest. Indeed, Plaintiff essentially admits that the source of the arrest was a "domestic call." *See* Cmplt. ¶ 101. Plaintiff does not allege, however, that Roechner, Rosado, or Perona placed that "domestic call." Plaintiff also nowhere alleges that Roechner, Rosado, or Perona "commanded, requested, or directed" Crest Hill police to arrest Plaintiff for domestic battery.

Moreover, Roechner is immune from liability under the Tort Immunity Act, to the extent Plaintiff alleges that merely ordering Plaintiff to travel to his place of work qualifies as a tort. Section 2-201 of the Tort Immunity Act states that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such

discretion even though abused." 745 ILCS 10/2-201. Here, Plaintiff alleges Roechner is a City policy maker. *See* Cmplt. ¶ 166. By extension, Roechner's decision to order Plaintiff back to the City Police Station was a discretionary police decision, which is immune from liability. *Cf. Rogers ex rel. Rogers v. Cook*, Case No. 08 C 2270, 2008 WL 5387642 at *2 (N.D. Ill. 2008) (decision to direct a student to the principal's office was a discretionary decision, which in turn immunized the defendants under the Act from a false imprisonment claim).

Because Count VI does not state a valid cause of action against Roechner, Rosado and Perona, the City must also be dismissed. *See* 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). In light of these defects, the City, Roechner, Rosado and Perona all must be dismissed from Count VI of the Complaint.

**VII.    Joliet, Roechner, Rosado And Perona Must Be
Dismissed From The Malicious Prosecution Count (VII)**

Count VII of the Complaint alleges a common law malicious prosecution claim against the City, Roechner, Rosado and Perona (along with two other defendants). Under Illinois law, the essential elements of a malicious prosecution claim include the following: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 26 (2019). Here, Plaintiff has insufficiently pled the first element of a malicious prosecution claim as it applies to the City, Roechner, Rosado and Perona.

As the Illinois Supreme Court recently clarified, "liability for malicious prosecution requires an examination of whether the defendant's conduct is both the cause in fact and a

proximate cause of the commencement or continuation of the original criminal proceedings." *Id*. at ¶ 46. In determining whether a defendant was the "proximate cause" of a prosecution, courts must examine whether a defendant "played a significant role" in the prosecution, which includes "those persons whose participation in the criminal case was so active and positive to amount to advice and co-operation." *Id.* at ¶¶ 45, 47.

Plaintiff has not alleged facts that meet this standard for Roechner, Rosado and Perona. Beginning with Perona, Count VII nowhere alleges that he played a role in Plaintiff's criminal investigation and prosecution. Nor is Perona anywhere referenced in Complaint paragraphs 95 through 121 as having anything to do with Plaintiff's investigation and prosecution, other than an offhand reference that Roechner "sent" Perona to the Crest Hill Police Department, *see* Cmplt. ¶ 105, and that Perona had ordered Plaintiff back to the Joliet Police Station. *See* Cmplt. ¶ 111. As a result, Perona must be dismissed from Count VII, due to the lack of any allegation that he was involved in Plaintiff's criminal prosecution.

Similarly, Roechner's only alleged role is that he supposedly "sent" Rosado and Perona to the Crest Hill Police Department, *see* Cmplt. ¶ 105, and he ordered Plaintiff back to the Joliet Police Station. *See* Cmplt. ¶ 111. The Complaint nowhere alleges facts that suggest Roechner's "participation in the criminal case was so active and positive to amount to advice and co-operation." *Beaman*, 2019 IL 122654, ¶¶ 45, 47. As a result, Roechner must be dismissed from Count VII, due to the lack of any allegation that he was involved in Plaintiff's criminal prosecution.

Alternatively, Rosado is immune from liability under the Tort Immunity Act, due to the discretionary nature of his alleged investigative efforts. As explained above, Section 2-201 of the

Act immunizes a public employee from liability due to "his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201.

The Complaint alleges that Rosado took "a lead role in handling the charge and the investigation into Jackson's alleged conduct," Cmplt. ¶ 116, and interviewed two witnesses, *see* Cmplt. ¶ 117, which "resulted in a one-sided police report, which failed to mention exculpatory evidence." Cmplt. ¶ 118. For obvious reasons, determining how an investigation should proceed is the epitome of a discretionary act. *See, e.g., Magnuson v. Cassarella*, 813 F. Supp. 1321, 1324 (N.D. Ill. 1992) (officer's decision regarding how to investigate a potential battery qualified for immunity due to its uniquely governmental and discretionary nature).

Granted, Count VII alleges the defendants "instituted and continued the proceedings maliciously." Cmplt. ¶ 221. Such a bald assertion, however, does not satisfy the *Iqbal* pleadings standard. *See Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) (without more, allegation that defendants "knowingly, intentionally, and maliciously" retaliated against plaintiff did not satisfy *Iqbal*); *accord A.B. v. Housing Auth. of S. Bend*, Case No. 3:11 CV 163 PS, 2011 WL 4005987 at *5 (N.D. Ind. 2011) (without more, allegation that defendant "intentionally and maliciously" evicted plaintiff did not satisfy *Iqbal*). Something more concrete is needed in order to defeat Rosado's discretionary immunity under Section 2-201 of the Tort Immunity Act.

Because Count VII does not state a valid cause of action against Roechner, Rosado and Perona, the City must also be dismissed. *See* 745 ILCS 10/2-109. In light of these defects, the City, Roechner, Rosado and Perona all must be dismissed from Count VII of the Complaint.

## VIII. The City Is Not Liable For Punitive Damages Under Counts V, VI and VII

Counts V, VI and VII of Plaintiff's Complaint allege the City is responsible for the common law torts of intentional infliction of emotional distress, false arrest/imprisonment, and malicious prosecution, respectively. In turn, Plaintiff seeks punitive damages from the City with

respect to Counts V, VI and VII. However, Illinois municipalities are not subject to punitive damages under Section 2-102 of the Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"). 745 ILCS 10/2-102 ("a local public entity is not liable to pay punitive or exemplary damages"); *accord Marshbanks v. City of Calumet City*, Case No. 13 C 2978, 2013 WL 4836741 at *7 (N.D. Ill. 2013) (striking punitive damage request against municipality). As a result, the Court should dismiss the punitive damage request in Counts V, VII and VII with respect to the City.

## CONCLUSION

For the reasons discussed above, the Defendants respectfully move this Court to dismiss (1) Rosado and Perona from Count I; (2) Count III against the City; (3) Rosado and Perona from Count IV; (4) Perona from Count V; (5) the City, Roechner, Rosado and Perona from Count VI; (6) the City, Roechner, Rosado and Perona from Count VII; and (7) the punitive damage remedies against the City in Counts V, VI and VII.

Respectfully submitted,

CITY OF JOLIET, AL ROECHNER, JOSEPH ROSADO and JOHN PERONA

By: /s/ James J. Powers_____
 One of Its Attorneys

**DATED: February 20, 2020**

James. J. Powers ARDC No. 6256540
Kelly A. Coyle ARDC No. 6312591
CLARK BAIRD SMITH LLP
6133 North River Road, Suite 1120
Rosemont, Illinois 60018
Telephone: (847) 378-7700
jpowers@cbslawyers.com
kcoyle@cbslawyers.com

# CERTIFICATE OF SERVICE

      The undersigned attorney certifies that he provided service of the foregoing CITY OF JOLIET, AL ROECHNER, JOSEPH ROSADO, AND JOHN PERONA'S MEMORANDUM OF LAW IN SUPPORT OF RULE 12(b)(6) PARTIAL MOTION TO DISMISS to the counsel of record listed below by filing the same with the Northern District of Illinois' CM/ECF electronic filing system on this 20th day of February, 2020:

> Michael J. Marovich
> Hiskes, Dillner, O'Donnell,
> Marovich & Lapp, Ltd.
> 10759 W. 159th St.
> Ste. 201
> Orland Park, IL 60467
>
> Stacey Vucko
> Vucko Law LLP
> 2208 Midwest Road
> Suite 104
> Oak Brook, Illinois 60523
>
> Michael R. Stiff
> Jeff Taylor
> Spesia & Taylor
> 1415 Black Road
> Joliet, Illinois 60435

                     By: /s/ James J. Powers_____